we'll start right away with United States v. Arrington 174092. Please proceed. Thank you. Two weeks before trial, Roderick Arrington's lawyer learned that he had represented a co-defendant who was involved in one of the overt acts alleged in the RICO conspiracy charged in the indictment. That co-defendant would testify, he learned on the second day of the hearing held by the court to address the issue. At that point, his attorney should have withdrawn or indeed the government should have moved to disqualify him. Instead, he stayed on the case and suggested a severance which hurt Mr. Arrington and doubled down by agreeing to go first before helpful testimony could be given. Is it your contention that this is an unwaivable conduct as in United States v. Wheat such that there was no possibility of a waiver or is the contention that there was not an adequate waiver by Mr. Arrington or knowing an intelligent waiver? Well our first contention is that it was unwaivable and I say that for the following reasons. The court has recognized there are narrow circumstances in which a conflict is considered non-waivable. Ordinarily, a defendant has a right to proceed with counsel of his or her choice, but in this particular case you have counsel who has represented a co-defendant on essentially an act that's alleged in the co-defendant, particularly here because Mr. Hicks, the co-defendant, did not waive the conflict. So even though a waiver was taken from Mr. Arrington and the second part of our argument, Your Honor, is that that waiver itself was insufficient even if the conflict was waivable. Is the argument that it was unwaivable ever raised below? I wasn't even clear that that was the argument you were making from the brief. That could be my missing it. Was the argument raised below? It was not raised by counsel for Mr. Arrington. It was raised by counsel for Mr. Hicks, who said that there was really no way that Mr. Arrington's counsel could stay on the case. Well he argued that there was no way he could stay on the case in the interest of Mr. Hicks and argued that Mr. Hicks was not, emphasized that Mr. Hicks was not waiving, which is a somewhat different thing than arguing that the conflict was not waivable from the standpoint of Mr. Arrington. The problem is counsel for Mr. Arrington was conflicted himself. Yes, and he stayed on the case all the way through. He was never replaced until the appeal. That's correct. Okay. That's correct. And in our position was, as soon as he learned that Mr. Hicks was going to take the stand, he had an obligation to yield, an unwaivable obligation to yield to counsel who could advise Mr. Arrington properly on, okay, how do you use the testimony that Mr. Hicks might offer? Now again, you're never entirely sure that he's going to testify. If he testifies, you're never entirely sure what he's going to say, but you could make certain very reasonable assumptions, and those would be one, he's going to deny the existence of the enterprise charged in the indictment. He's likely going to deny that there was any overall plan for the shooting of Quincy Balance. Those are things you could absolutely expect him to help Mr. Arrington with. So to immediately suggest a severance to solve your own problem, in this case Mr. Lotempio, I'd like a severance. It helps me out. Well, it certainly didn't help his client out, and that's why we say Mr. Arrington was entitled at that moment to conflict-free counsel to advise him. Is the problem the severance or the problem the volunteering to go first? I don't necessarily want to split hairs here, but it would seem to me that if there was a severance and Mr. Arrington went second, he would have the best of both worlds because he would have some notion probably then of what Mr. Hicks would actually say rather than having to respond on the spot to whether Hicks took the position you outlined or tried to just get himself out of the murder situation by saying that something could be harmful to Arrington. Well, Arrington came up and suggested that he would be happy to kill these fellows, but I said no, I don't want that. I want to just investigate whether they're actually responsible first before we do anything. And then Arrington just shows up and shoots the guy. But if Arrington just shows up and shoots the guy, that's not a RICO offense. Not necessarily, but we'll put that to one side. I'm just suggesting that or raising the question of would a severance with Hicks being tried first not be the best of all worlds? It's certainly better than what happened and I would say it would help, but either a severance with Hicks going second or let's say the trial judge wasn't willing to let Hicks go second, then no severance at all. Did Hicks say anything that was incriminating as to Arrington? By and large, he helped Arrington. We have laid out the testimony as to what Mr. Hicks said. I can point to five things that I counted there. I think I have those, so at least for me you need not go over those, but what I wanted to ask is, is it so clear that since there was no incriminating evidence from Hicks towards Arrington, is it so clear that Arrington's lawyer couldn't examine him to bring out the favorable things about Hicks? Would that breach the attorney-client privilege? He's not questioning his credibility, he's simply getting the exculpatory information from him. But Hicks had to waive for that to happen and Hicks refused to waive the conflict. So absent a waiver, an attorney may not cross-examine a former client even if it doesn't hurt the client in any way? Not an absolute rule, but here in this case you had an attorney examining a former client not about some real estate closing, but about the actual facts that are alleged in the indictment. In other words, his representation related to Racketeering Act 36 in the indictment before the jury. Of course, at the time that this conference is being held, pretrial, when all this is going on, no one knows ex ante, or at least neither the judge nor the prosecutor nor Mr. Lotempio have any idea what Hicks would say. As you say, there could be some speculation that he might say something useful, but he might say something harmful either mixed in with that or something that might be a different mix. So it's harder to form a judgment as to whether Mr. Lotempio would have to attack Arrington in some way or other. Well, I think it is possible he would have had to attack him, but on the other hand— I think this is a friendly question, right? I mean, is it better for you if there's some problem that maybe he wouldn't? Yes, it is. I appreciate the question and the answer is yes. But yeah, there are certain things he should have anticipated that Hicks might say as well. You have an issue, you take issue with the colloquy, the cursio. Yes, specifically because you have to waive knowingly, voluntarily, and intelligently. And there was no discussion of the issue of either the severance or of what to do with Mr. Hicks, whose lawyer got up and insisted very strongly that he would testify. Any competent lawyer would know. That could be a boon. And in fact, I described Hicks' testimony in the brief and it was very helpful. Is there anything in the record that indicates that Mr. Arrington ever found out or even knew that Mr. Lotempio had suggested this severance and that that was why the severance or a contributing factor to why the severance was going to happen? No, there's nothing in the record to really suggest that at all. And I see I'm out of time, but I'll note the court need not reach the issue I've spent all my time on because the evidence was insufficient on each count of the indictment. We'll hear from the government. Good morning, honors. Waze Young for the United States of America as the FLV. I also represented the government at Roderick Arrington's trial and at both of Aaron Hicks' trials. I want to start by dispelling two myths that defense counsel or appellant's counsel has perpetrated here. The first is the certainty with which Hicks' counsel had declared prior to the severance that he was going to testify. And the second is what anyone could have guessed what Hicks was going to say. Can I direct you or ask you to at least at some point talk about the colloquy, the cursio, hearing itself? The adequacy of it. And the adequacy of it? Yes, Judge. Before we reach the cursio, with respect to what started this, that Hicks supposedly said he was going to testify, your counsel here has insisted, says that Hicks' counsel insisted strongly that Hicks was going to testify. But if you actually look at what Hicks' own attorney said before September 11, 2017, which was jury selection on Arrington's trial, this is what he said, quote, who knows what happens at trial, can't predict. That's in the appellant appendix, page 293. Why does that matter? I mean, once there is any possibility, and certainly Mr. Hicks' lawyer indicated to the court that this was not some no-brainer case where this guy is never going to take the stand, but that perhaps, as a surprise to some, that this was a case where this was being strongly considered. Doesn't that create the conditions for what actually happened, a cursio hearing and a discussion of whether that creates a conflict of interest and what needs to happen? It goes to what the conflict may be, whether it's actual, what a potential conflict may arise, and what the remedy ought to be. When you consider it from what the district court had to actually deal with, without, as Your Honor brought up, Wheat, Wheat says that an appellate court gives substantial latitude to the district court because the district court has to make these conflict decisions without the wisdom of hindsight. All right. So let's look at this with the record frozen as of September 6, 2017, five days. You're not suggesting that there should not have been a cursio hearing? No. That's not what I'm suggesting. And similarly, I thought that, may I help you out now, but I thought that you identified and got a sort of abrupt dismissal from the judge the possibility that Hicks could testify favorably to Arrington. And that was something that ought to be considered in this discussion. Well, looking back on it, I got it wrong. And the district court was right, as always. Very clever. Very clever. When you're the appellate. You have two problems, Judge. I think from the district court's perspective, not only was Hicks equivocal to the point of he might as well have said nothing about whether he was going to testify, he actually rejected the district court's offer of a severance, which would have helped him, because it would have alleviated him from having to deal with Lotempio. And Hicks bought. So when you're at the district court looking at this, at a RICO case, these guys have been in custody for two and a half years. You've got speedy trial in the back of your mind. And then you know that the government's witness list was released two weeks earlier. What you're seeing when Hicks proposes there's a problem, I might want to transfer this case to the district court to prevent me. But if you remove Lotempio, I don't want that either. Well, Hicks is just bringing you along at this point. That's how you see it as a district judge. It's just a delay tactic. But secondly, with respect to whether your issue . . . Are you suggesting that as a consequence we don't have to get into any of this because there didn't need to be a Corsio hearing? No, Judge. And the . . . And are you suggesting that if there . . . that's the possibility that Mr. Hicks would testify possibly adversely to Arrington and possibly in a way that might help him? I don't think that had to be gotten into explicitly. And here's why, Judge. You asked the Appellant's Counsel about pretrial, who would have known whether Lotempio would have had to attack Hicks as a witness. If we look at what Hicks was telegraphing, the way that he filed his motion, he said, I'm afraid to testify because Lotempio is going to cross me. But if you are a defense attorney, why would you attack a witness? You only attack a witness who says something inculpatory about your client, not somebody who says something exculpatory. So the very fact that Hicks was saying, I'm afraid of getting cross-examined by my co-defense attorney, telegraphs not that he was going to testify favorably about Arrington, but he was going to pin something on Arrington that would have merited an attack. Which is the usual case in a cursio hearing. That really is what you're usually concerned about. This is a reverse situation from what I've seen, where the non-waving, non-client, former client, is actually going to give exculpatory testimony. It's just not what we generally look for. I'm agreeing with you. This is helpful to you. Right. So the circumstance I agree is a little unusual. I could find none where a court has come out differently in terms of reversing what the district court has done. And I think part of it is because of the specter of what the district court faces. It's a lose-lose proposition for the district court. On the one hand, you have to be careful. Why is it that as part of this colloquy, I mean, you may be right, you may be wrong, we may agree or disagree, but why isn't it at a minimum appropriate as part of a cursio hearing, as part of this colloquy, to let the defendant, Mr. Arrington, know about the consequences of severing, of not severing, and so on? So go into the adequacy. Under the circumstances that you've outlined, why wasn't that at a minimum required? Judge, the adequacy of the cursio hearing, part of it was the cursio hearing with Arrington happened first. So Arrington first said that he wanted Latempio, even if it meant Latempio giving up his ability to cross-examine Hicks. And then Hicks was brought on, and Hicks decided or claimed that he didn't want to waive, and so the decision was made by the district court. Does that absolve a district court or, frankly, the government from having a cursio hearing and completing, once you figure out that there might be this issue of severance, after Mr. Hicks has said what he said, completing the cursio? No, because Arrington doesn't have a right to a joint trial. So if we look at what the conflict would have been, one, we're asserting it's not an actual conflict, because at that time, pre-trial, there was no interest that diverged between Latempio and Arrington. What about the volunteering to go first? I've never seen a defense lawyer in a severance situation say, I want to be the one to go first. Even if there was no issue of Hicks's testimony, if you go second, you get the benefit of seeing the government's case. You get the benefit of what prosecutors, in my experience, never want to see, which is the prosecution witnesses have to testify twice, leading to twice as many possible impeachment issues if there are inconsistencies in the testimony. It's just curious to me, when you look at what's happening after Arrington is out of the room, and the situation changes somewhat, doesn't it? Now we're no longer talking about what's going to happen at a joint trial, and you say, well, this is a great dilemma for the district judge. The district judge didn't seem to have a lot of trouble solving the dilemma. He saw the solution, sever the cases, and then maybe we don't have a problem. But it seemed to me it was rather obvious that Mr. Latempio was agonizing about what was best for him, and said, here's what will solve my problem, and I'm so eager to have it done that I'm willing to go first. And it's not obvious to me, and it may not be obvious, or maybe it shouldn't have been obvious, I don't know. It would be for the benefit of hindsight that this was in some way adverse to Arrington, but it certainly was not at all clear that Mr. Latempio was saying, let's do the severance, let's go first, because Arrington wants a speedy trial and wants to go first, and it's in his interest to do that as opposed to, I want a severance so that I can continue the representation, and I want it so much that I'm willing to do this so that we don't have a big fight over who goes first. Judge, Mr. Latempio had been on the case two years at the time, and I think there is actually enormous risk to pushing a co-defendant. Well, one reason why he would want to go second, or he would want someone to go second, if he winds up out of the case, it's in Arrington's interest if he has a new lawyer to go second so the lawyer has more time to prepare, and if he has Latempio, it's in his interest for all the reasons I've suggested. Judge, there's enormous risk to pushing a co-defendant to trial before you. Look at what happened to Marcel Worthy, Arrington's co-defendant. He gets pushed to trial. The morning of jury selection, he turns and testifies against Arrington. That's the same could well have happened to Hicks. I'm sorry, Judge? He came out to his benefit. He got to be a cooperator and got a better deal. Right, but not against Arrington. So in terms of, I'm out of time, but if I may answer the question, with respect to second-guessing what should have or could have happened, if Latempio had said, no, we're going to go second, see what Hicks says, Hicks either won, doesn't testify, he didn't testify at his second trial, he ended up admitting at his first trial that he lied to a prior state jury, so he doesn't testify at his second trial. There's no telling whether he would have testified at the first trial by himself. And secondly, if pushed to either getting convicted with a life sentence hanging over him or doing the same thing Worthy did, he flips, testifies against Arrington. Now we're back looking at, oh, Latempio, instead of committing a structural error of disqualifying counsel of choice, we're looking at Latempio, which says this is a complicated tactical decision for defense counsel as to what is in his client's interest. And isn't that precisely the situation in which you want an unconflicted lawyer, giving it that advice and making that decision? Now, again, I was a little surprised by the argument that this is an unwaivable conflict. I wasn't sure that's something that the defendant was saying before. But at least as to what needs to be explored and what advice needs to be given, I'm troubled by the fact that this whole question of is a severance really in your interest and is that something about which there may be conflicting views and the judgment may be affected by the lawyer's conflict is something that I would, certainly with the benefit of hindsight, I think, should have been explored. It may be a little harder to figure out, again, with understanding of the district judges facing this kind of coming up wall by surprise. But it strikes me it's a troubling problem. Judge, if anything, the record does not have what Kershial counsel, who was appointed, discussed with Mr. Arrington outside of the presence of the Court. So if anything, I would say that we should do what is normally done. Didn't that discussion with the Kershial counsel also happen before? First of all, Arrington's discussion with Kershial counsel, but am I wrong that the Court's hearing from the independent attorney happened before this discussion outside Arrington's presence that surfaced severance is likely the way to go here? Am I wrong about that? Judge, the discussion with Arrington happened over the course of two days. Kershial counsel came on, was appointed late the first day, but actually spoke with Arrington and then came back the next day. Whether Kershial counsel himself discussed with Mr. Arrington the potential options of what the district court faced that may not have been discussed with the Court on the record, that's not clear. So assume that there's nothing on the record about Kershial counsel's conversations relating to severance. Then where are we? Judge, I would still say that given the state of the matter as existed, without the wisdom of hindsight, Hicks testifying once, lying about certain things, not testifying a second time, what he was going to say, if we look at it from the perspective of a district court, of all the different positions Hicks was taking, this is recognized as a district court, I think, correctly recognized as just a delay tactic, and having Mr. Arrington go to trial, there's nothing you can point to that Mr. Latempio did that even appellant counsel now would have did differently. I think when you're weighing... I think he's about to beg to differ, but go ahead. When you're weighing the prospect of being accused of a structural error of depriving Arrington of his right to counsel of choice and having an automatic redo from that point versus the government gets accused enough of manufacturing conflicts to knock defense attorneys off cases. We saw fit not to do that here. The district court would simply have to be confronted with the same situation we are now. It's either you're dealing with a structural error, with an automatic redo, or at least you're dealing with ineffective assistance of counsel where you're looking for prejudice and harmless error analysis. And for that, I think the district court made the correct decision here. Thank you. Counsel claimed that it wasn't clear that Mr. Hicks wanted to testify. I direct the court to page 267 of the joint appendix, lines 16 and 17. But our biggest thing is my client wants to testify. That was brought up the first day. He later said that can change during the course of trial, but the issue was on the table. And in terms of the argument for this being a non-waivable conflict, I just wanted to point it's on page 52 and 53 of my brief. And I guess what I was trying to say is that a conflict is non-waivable if no rational defendant would knowingly and intelligently have desired Mr. Letempio's representation. In other words, the argument is it's unwaivable because, as stated on those pages, no rational defendant would waive the right to an unbiased advice on how to proceed in light of the information that was put forward. Thank you very much. Thank you. We'll reserve the decision.